UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          CIVIL ACTION NO:

_____
                                       )
TAHI GILLIAM,                          )
                                       )
                                       )
            Plaintiff                  )
                                       )
v.                                     )          **DEMAND FOR JURY TRIAL**
                                       )
                                       )
CLEAR CHOICE MANAGEMENT                )
SERVICES, LLC,                         )
CLEAR CHOICE HOLDINGS, LLC             )
IMPLANT DENTISTRY OF NEW YORK, P.C.,   )
& DR. YU KATO                          )
                                       )
                                       )
                                       )
            Defendants                 )
_____)


## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, Tahi Gilliam ("Ms. Gilliam" or "Plaintiff"), at the time of her

employment, was a resident of the State of New York, residing in White Plains.

2.      Currently, Ms. Gilliam resides at 184 Forest Road, Southbury, CT 06488.

3.      Ms. Gilliam is a woman.

4.      Defendant, Clear Choice Management Services, LLC ("Clear Choice") is a for

profit corporation that is incorporated in the State of New York and does business in the State of

New York, including by operating facilities located at 230 Westchester Avenue, White Plains, NY, 10604.

5.      Defendant, Clear Choice Holdings, LLC ("Holdings") is a for profit corporation that upon information and belief is incorporated in the State of Colorado and does business in the State of New York, including by operating facilities located at 230 Westchester Avenue, White Plains, NY, 10604.

6.      Defendant, Implant Dentistry of New York, P.C. ("Implant Dentistry") (Clear Choice and Implant Dentistry, collectively and individually, the "Company") is a for profit corporation that is incorporated in the State of New York and does business in the State of New York, including, upon information and belief, by having a principal office and operating facilities located at 230 Westchester Avenue, White Plains, NY, 10604.

7.      Defendant, Dr. Yu Kato ("Dr. Kato") (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato, collectively and individually, the "Defendants") is an adult male, who, upon information and belief, resides in the State of New York.  At all relevant times, Dr. Kato was the Company's New York Operations Manager. Dr. Kato is named in both his individual and official capacities.

## Jurisdiction and Venue

8.      The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Americans with Disabilities Act (42 U.S.C. §§12101, *et seq.)*, Title VII (42 U.S.C. §2000e-2, et al.), and 42 U.S.C. §§1981. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

9.      Venue is appropriate in the Southern District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.

10.     This court has personal jurisdiction over Clear Choice because Clear Choice is a resident of New York because it is a domestic corporation incorporated in New York.  In addition, during the relevant period, Clear Choice engaged in and transacted business in the State of New York, including by owning, managing and/or operating facilities in New York, and/or by employing the Plaintiff in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Clear Choice within the State of New York. Indeed, the Plaintiff was employed by Clear Choice in the State of New York, was managed and reprimanded by Clear Choice in the State of New York and was terminated by Clear Choice in the State of New York.

11.     This court has personal jurisdiction over Holdings because, during the relevant period, Holdings engaged in and transacted business in the State of New York, including by owning, managing and/or operating facilities in New York, and/or by employing the Plaintiff in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Holdings within the State of New York.  Indeed, the Plaintiff was employed by Holdings in the State of New York, was managed and reprimanded by Holdings in the State of New York and was terminated by Holdings in the State of New York.

12.     This court has personal jurisdiction over Implant Dentistry because Implant Dentistry is a resident of New York because it is a domestic corporation incorporated in New York. In addition, during the relevant period, Implant Dentistry engaged in and transacted business in the State of New York, including by owning, managing and/or operating facilities in New York,

and/or by employing the Plaintiff in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Implant Dentistry within the State of New York. Implant Dentistry is registered with the New York Department of State as a domestic corporation operating in the State of New York. Indeed, the Plaintiff was employed by Implant Dentistry in the State of New York, was managed and reprimanded by Implant Dentistry in the State of New York and was terminated by Implant Dentistry in the State of New York.

13.     This court has personal jurisdiction over Dr. Kato because he is, upon information and belief, a resident of New York. Additionally, the Court has personal jurisdiction over Dr. Kato because Dr. Kato purposefully availed himself of New York law by managing and operating a business in New York, transacting business in New York, and/or supervising employees (including, during the times relevant to this Complaint, The Plaintiff) in New York. Further, the claims at issue stem from and/or are related to Dr. Kato's contacts with the State of New York. Dr. Kato served in a supervisory capacity related to the Plaintiff in the state of New York. Indeed, Dr. Kato was Plaintiff's managerial supervisor regarding Plaintiff's work assignments in the State of New York. Plaintiff was therefore employed by Dr. Kato in the State of New York, supervised and managed by Dr. Kato in the State of New York, and was terminated by Dr. Kato in the State of New York.

## **Statement of Facts**

14.     Plaintiff is a black African-American woman with dark skin color.

15.     Indeed, Plaintiff's skin color is darker than that of most individuals who are not "black" in terms of their race and her skin color is likewise darker than some individuals who identify as African American.

16.     On or around January 6, 2020, Plaintiff began employment with the Defendants as a surgical assistant at a dental practice location owned and operated by the Defendants in White Plains, NY.

17.     At all relevant times, the Company (including each of Clear Choice, Holdings, and Implant Dentistry, individually) employed 15 or more employees during 20 or more calendar weeks during the relevant calendar years.

18.     Accordingly, at all relevant times, the Company (including each of Clear Choice, Holdings, and Implant Dentistry, individually) was an employer under federal anti-discrimination laws and New York State Human Rights Law.

19.     During her employment, Clear Choice, Holdings, and Implant Dentistry were so interrelated that they should be considered a joint employer of Ms. Gilliam.

20.     Upon information and belief, Clear Choice, Holdings, and Implant Dentistry share one or more executives, officers, principals, and/or one or more board members.

21.     Clear Choice, Holdings, and Implant Dentistry shared common human resources and labor relations functions, personnel, policies, and practices.

22.     Clear Choice, Holdings, and Implant Dentistry each exercised control over Ms. Gilliam's employment, including her hiring, termination, assignments, and pay.

23.     Accordingly, Clear Choice, Holdings, and Implant Dentistry were joint employers of Ms. Gilliam pursuant to relevant state laws.

24.     At all relevant times, Ms. Gilliam was a qualified employee with satisfactory performance.

25.     Indeed, as a result of Ms. Gilliam's competencies and satisfactory performance, she was eventually promoted to a personal examiner.

26.     After Ms. Gilliam's hiring, she was assigned to report to the office manager, Kimberly Rodriguez ("Ms. Rodriguez"), and the operations manager and lead dentist, Dr. Yu Kato ("Dr. Kato").

27.     Ms. Rodriguez is a Hispanic woman with skin color lighter than that of Ms. Gilliam .

28.     Dr. Kato is an Asian man with skin color significantly lighter than that of Ms. Gilliam .

29.     During all relevant times of her employment, Ms. Gilliam was one of few African-American employees at her office location.

30.     After Ms. Gilliam  was assigned to report to Dr. Kato, he (Dr. Kato) began to treat Ms. Gilliam in a harsh and more critical manner than her non-African American, lighter-skinned peers.

31.     For instance, Dr. Kato spoke to Ms. Gilliam in short, terse sentences and looked annoyed when she asked him questions regarding her job.

32.     Additionally, Dr. Kato often put Ms. Gilliam on the spot during group meetings and asked her impromptu questions under pressure, to test whether she was listening, in a manner clearly meant to belittle Ms. Gilliam . Importantly, Dr. Kato did not similarly ask public questions of Ms. Gilliam's non-African American, lighter-skinned coworkers in such meetings.

33.     In or around February 2020, Ms. Gilliam raised protected concerns to Ms. Rodriguez that she believed Dr. Kato was treating her worse than her non-African American coworkers, seemingly because she was one of the few African American employees within his practice.

34.     Ms. Rodriguez told Ms. Gilliam she would speak to Dr. Kato regarding her (Ms. Gilliam's) protected concerns.

35.     Upon information and belief, Mr. Kato did learn that Ms. Gilliam had raised protected race-related concerns.

36.     After Ms. Gilliam raised these protected concerns to Ms. Rodriguez, Dr. Kato's seemingly discriminatory behavior not only continued, but in fact worsened.  Indeed, Dr. Kato increasingly spoke to (or otherwise referred to) Ms. Gilliam using language that was unprofessional.

37.     In or around March 2020, Ms. Gilliam raised protected concerns to Dr. Kato that she felt he was singling her out for unprofessional treatment and was generally treating her worse than her coworkers, seemingly due to her race and darker skin color.

38.     Dr. Kato dismissed Ms. Gilliam's protected concerns, indicating he did not take her protected concerns seriously.

39.     Over the summer of 2020, the Plaintiff noticed that her timecard was not properly recording her punch-ins and punch-outs.

40.     Around this time, the Plaintiff spoke with Ms. Rodriguez and made her aware of the issue with her timecard.

41.     Ms. Rodriguez informed the Plaintiff she would rectify her punches as she knew the Plaintiff had arrived on time.  Indeed, Plaintiff had indeed arrived on time and the time recording system was not working properly.

42.     On or around July 31, 2020, Ms. Rodriguez told the Plaintiff that she would no longer be able to accrue paid vacation days.

43.     On or around August 3, 2020, Ms. Gilliam spoke with Ms. Rodriguez regarding this policy change. Ms. Rodriguez rudely told Ms. Gilliam that Ms. Gilliam should not have an issue with this change unless it interfered with her living "paycheck to paycheck."

44.     Ms. Rodriguez's comment clearly demonstrated a negative racial stereotype of Ms. Gilliam, an African-American woman, only being able to afford to live paycheck to paycheck.

45.     Ms. Gilliam raised protected concerns to Ms. Rodriguez that her comment was racially insensitive.

46.     Around this time, Ms. Gilliam and Ms. Rodriguez carpooled home one day with another coworker, Tiara James ("Ms. James").

47.     Ms. James is a non-African American woman who has lighter skin color than the Plaintiff.

48.     Ms. Rodriguez began speaking about a colleague at the Company, Dr. David Zelig ("Dr. Zelig").

49.     Dr. Zelig is a Caucasian man.

50.     In the course of this conversation, the Plaintiff mentioned to Ms. Rodriguez that she also knew Dr. Zelig, as he had given her career advice on multiple occasions.

51.     Ms. Rodriguez then harassingly declared that because she (Ms. Gilliam) was a black woman, the Plaintiff should be careful not to be seen in public with Dr. Zelig (who is white) in case "respectable" people thought she was his prostitute.

52.     This comment stunned Ms. Gilliam , who notably did not suggest she was in a sexual relationship with Dr. Zelig.  Indeed, the harassing comment of Ms. Rodriguez was clearly

based on negative and highly offensive stereotypes about African American women being sexually promiscuous and/or willing to engage in prostitution or otherwise sell sex for money.

53.     Shocked by this harassing comment, Ms. Gilliam raised protected concerns during the car ride to Ms. Rodriguez, including noting that her comment was highly offensive as it implied multiple negative racial stereotypes about the Plaintiff's race and color, particularly that because she was a black woman who was friends with a white doctor, she would be assumed to be his prostitute.

54.     Ms. Rodriguez shrugged off these protected concerns and would not make eye contact with Ms. Gilliam .  Ms. Rodriguez clearly appeared to be annoyed by Ms. Gilliam's expression of protected harassment and discrimination concerns.

55.     The following day, on or around August 4, 2020, Ms. Rodriguez suddenly accused Ms. Gilliam of being lethargic and noncommitted in the workplace.

56.     Notably, as this was the first time such a complaint against Ms. Gilliam had been levied, it was clear this was retaliatory due to the fact that Ms. Gilliam  had recently raised concerns about race-related harassment the day prior.

57.     Ms. Gilliam made clear to Ms. Rodriguez she was motivated and committed to working for the Company.

58.     On or around August 10, 2020, Dr. Kato asked the Plaintiff to move a number of heavy boxes with equipment. Notably, this was not a task that surgical assistants such as the Plaintiff were normally asked to complete.  It appeared that Dr. Kato was singling the Plaintiff out for this menial and physically demanding task due to her race.

59.    At Dr. Kato's insistence, Ms. Gilliam attempted to move the heavy boxes.   Upon lifting one of the boxes, Ms. Gilliam suffered a shooting pain along her side and a strain in her lower back.

60.    Within minutes, Ms. Gilliam felt an external growth begin to swell as a result of the pressure placed on her body by attempting to move the boxes.

61.    At all relevant times, Ms. Gilliam's external growth was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. Ms. Gilliam's external growth further substantially limited one or more of her major bodily functions, including but not limited to her muscular systems. Accordingly, Ms. Gilliam was disabled under both federal law and New York state law.

62.    The Plaintiff disclosed her external growth to Dr. Kato and informed him that it began to rapidly swell as a result of her injury lifting boxes, and her symptoms of pain now included shooting pains up and down her back.

63.    These back-related symptoms persisted and were later diagnosed as a chronic slipped disc and pinched nerve (collectively, Plaintiff's "back condition").

64.    At all relevant times from August 2020 onward, Ms. Gilliam's back condition was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. Ms. Gilliam's back condition further substantially limited one or more of her major bodily functions, including but not limited to her muscular systems. Accordingly, Ms. Gilliam was disabled under both federal law and New York state law.

65.     Around this time, Ms. Gilliam disclosed her back condition symptoms to Dr. Kato.  From that point on, Dr. Kato and the Company clearly regarded Ms. Gilliam as being disabled based on this issue.

66.     Ms. Gilliam requested the reasonable accommodation of taking the rest of the day off of work, which Dr. Kato granted.

67.     On or around August 11, 2020, the Plaintiff came to work but was still in a great deal of pain due to her disability flare-up and back injury. As a result of Plaintiff's clearly visible pain (by way of timid movement and wincing in pain), Ms. Rodriguez asked Ms. Gilliam if she was alright.

68.     Ms. Gilliam talked about her disabilities and requested the reasonable accommodation of another day off in order to seek treatment. Ms. Rodriguez granted this request.

69.     This same day, the Plaintiff sought care at an urgent care clinic. The provider at the clinic informed her that her hemorrhoid  had swollen rapidly, and recommended that she get more advanced treatment, including x-rays and MRI scans, at the hospital by her primary care doctor (as the clinic did not have such equipment) because she might have suffered nerve damage or a slipped disc due to her back pain symptoms. The clinic provider recommended that Ms. Gilliam stay out of work until a proper scan was performed.

70.     On or around August 12, 2020, Bryce Burger ("Mr. Burger"), the business director of the Company, contacted Ms. Gilliam and strangely asked if she (Ms. Gilliam) was dating anyone in the workplace.

71.     Mr. Burger is a Caucasian man with light skin color.

72.     Notably, being romantically involved with a coworker was not against Company policy and would not have required involvement from management. Nevertheless, Ms. Gilliam informed Mr. Burger truthfully that she was not dating anyone within the workplace. Indeed, Ms. Gilliam was at that time engaged to be married to someone who did not work for the Company.Ms. Gilliam raised protected concerns to Mr. Burger regarding this seemingly retaliatory and intrusive probe into her personal life (which appeared to be motivated by underlying stereotypes about black women being promiscuous).  As part of raising these concerns, Ms. Gilliam informed Mr. Burger of Ms. Rodriguez's racially discriminatory and harassing comment that if Ms. Gilliam were to be seen with a white doctor (Dr. Zelig), she might be assumed to be his prostitute (presumably because of her race, skin color, and sex).

73.     Upon information and belief, Mr. Burger did not similarly ask questions of the male Caucasian employees at the Company, including Dr. Zelig, regarding whether they were dating anyone at the Company.  Instead, Mr. Burger targeted the female African American Plaintiff for this intrusive probing into her personal life.

74.     On August 13, 2020, Ms. Gilliam remained in significant pain due to her disabilities.  Accordingly, the Plaintiff requested the disability accommodation from Dr. Kato and Ms. Rodriguez of taking the day off because of her continuing pain. Indeed, the Plaintiff mentioned to Dr. Kato and Ms. Rodriguez that, at the advice of her medical provider, she would need to see a doctor to get comprehensive scans done in case she had lasting back damage such as nerve damage or a slipped disc.

75.     Because she had already been scheduled to work a reduced shift that day, this request was clearly not an undue burden.

76.     Dr. Kato and Ms. Rodriguez did not sound pleased when Plaintiff told them that her medical provider had recommended that she undergo additional disability-related medical tests.   That said, they granted the request for an additional excused day off.

77.     On or around August 14, 2020 (the next day), the Plaintiff received a call from Dr. Kato and Mr. Burger.

78.     Strangely, Mr. Burger made reference to alleged tardiness issues from February and March 2020, even though those were nearly six months in the past.

79.     Notably, the Plaintiff had never been counseled at the time for alleged tardiness issues, and she had not received any prior discipline for such alleged offenses.

80.     Mr. Burger then informed the Plaintiff that she was terminated.

81.     Accordingly, the Plaintiff was involuntarily terminated from her employment on August 14, 2020.

82.     Notably, the Plaintiff was terminated in short temporal proximity after having raised protected concerns regarding discriminatory and harassing behavior.

83.     Further, the Plaintiff was terminated shortly after disclosing a disability and disclosing symptoms and likelihood of further disability treatment and accommodations

84.     Indeed, shortly after her termination, Ms. Gilliam's doctor confirmed that Ms. Gilliam's back condition was actually pain from both a pinched nerve and a slipped disc due to the incident when the Plaintiff was required to lift heavy boxes at work.

85.     Importantly, the Company employs a progressive disciplinary policy wherein employees are first given verbal warnings (in writing), then written warnings, then a suspension and/or termination.

86.     The Company skipped one or more steps in its progressive disciplinary policy by terminating the Plaintiff for alleged attendance issues despite a lack of prior discipline for such.

87.     On or around February 11, 2021, the Plaintiff timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

88.     On or around August 10, 2021, the Plaintiff timely amended her Charge of Discrimination with the NYSDHR.

89.     On or around April 1, 2022, the Plaintiff again timely amended her Charge of Discrimination with the NYSDHR.

90.     On or around April 18, 2022, the Plaintiff informed the NYSDHR of her intent to remove her charge in order to pursue her claims in court and accordingly requested that the NYSDHR provide an administrative convenience dismissal to allow her to pursue her claims in court.

91.     On or around May 6, 2022, the NYSDHR issued the Plaintiff an administrative convenience allow her to pursue her claims in court.

92.     On or around August 1, 2022, the EEOC provided the Plaintiff with a Notice of a Right to Sue letter.

93.     This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements

## COUNT I

**(Race and Color Discrimination in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)**

94.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

95.     At all relevant times, the Company employed four or more persons.

96.     The Company is an employer under the definition of Executive Law Article 15 ("NYSHRL").

97.     Ms. Gilliam is an African-American woman with dark skin color.

98.      The Defendants, including, but not limited to, its agents, harassed and discriminated against Ms. Gilliam with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Gilliam's color and race.

99.     More specifically, by way of illustration, the Defendants, including by its agents and employees, made racially discriminatory remarks and perpetuated inappropriate stereotypes about Ms. Gilliam's race and color. For instance, Ms. Rodriguez stated that if the African-American Plaintiff were to be seen with a white doctor, then others would think she were a prostitute (suggesting a black woman would otherwise not be with a white man). On another occasion, Ms. Rodriguez suggested Ms. Gilliam must be living paycheck to paycheck compared to her lighter-skinned coworkers. Further, Dr. Kato spoke to Ms. Gilliam in a more aggressive manner than he did her lighter-skinned coworkers and suggested it was due to the way he was raised (presumably to treat darker-skinned races in a derogatory manner).

100.    The Defendants discriminated against Ms. Gilliam based on her race and color by subjecting her to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

101.    Upon information and belief, the Company replaced the Plaintiff with a lighter-skinned employee who was not African American.

102.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of the Plaintiff and/or conduct so reckless to amount to such disregard.

103.    Dr. Kato discharged, expelled, barred, and/or discriminated against the Plaintiff in compensation, conditions, and/or privileges of employment based on rights afforded to the Plaintiff under NY Exec L §296.

104.    Dr. Kato aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under NY Exec L §296.

105.    As a direct and proximate result of the Defendants' violations of the NYSHRL, Ms. Gilliam has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

106.    Ms. Gilliam seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT II

### (Race and Color Discrimination in Violation of Title VII)

### The Plaintiff v. Clear Choice and Implant Dentistry

107.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

108.    During all relevant periods, the Company (Clear Choice and Implant Dentistry) was an employer under Title VII, 42 U.S.C. §§ 2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

109.    Ms. Gilliam is an African-American woman with dark skin color.

110.    The Company, including, but not limited to, its agents, harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of the Plaintiff's color and race.

111.    More specifically, by way of illustration, the Company, including by its agents and employees, made racially discriminatory remarks and perpetuated inappropriate stereotypes about the Plaintiff's race and color. For instance, Ms. Rodriguez stated that if the black, African-American Plaintiff were to be seen with a white doctor, then others would think she were a prostitute (suggesting a black woman would otherwise not be with a white man). On another occasion, Ms. Rodriguez suggested the Plaintiff must be living paycheck to paycheck compared to her lighter-skinned coworkers. Further, Dr. Kato spoke to the Plaintiff in a more aggressive manner than he did her lighter-skinned coworkers and suggested it was due to the way he was raised (presumably to treat darker-skinned races in a derogatory manner).

112.    The Company discriminated against the Plaintiff based on her race and color by subjecting her to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

113.    Upon information and belief, the Company replaced the Plaintiff with a lighter-skinned employee.

114.    The Company, including through its agents and employees, committed a discriminatory act in a willful, wanton, and/or malicious manner.

115.    As a direct and proximate result of Company's violations of Title VII, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

116.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

## COUNT III

**(Race and Color Discrimination in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)**

117.    The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

118.    During all relevant periods, the Defendants were employers under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981") because they employed one or more persons.

119.    The Defendants harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of the Plaintiff's race (African-American) and color (black-skinned).

120.    More specifically, by way of illustration, the Defendants, including by its agents and employees, made racially discriminatory remarks and perpetuated inappropriate stereotypes about the Plaintiff's race and color. For instance, Ms. Rodriguez stated that if the African-American Plaintiff were to be seen with a white doctor, then others would think she were a prostitute (suggesting a black woman would otherwise not be with a white man). On another occasion, Ms. Rodriguez suggested the Plaintiff must be living paycheck to paycheck compared to her lighter-skinned coworkers. Further, Dr. Kato spoke to the Plaintiff in a more aggressive manner than he did her lighter-skinned coworkers and suggested it was due to the way he was raised (presumably to treat darker-skinned races in a derogatory manner).

121.    More specifically, by way of illustration, the Defendants subjected the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

122.    The Defendants engaged in discrimination or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Gilliam.

123.    As a direct and proximate result of the Defendants' violations of Section 1981, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

124.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Disability Discrimination in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)**

125.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

126.    At all relevant times, the Company employed four or more persons.

127.    The Company is an employer under the definition of Executive Law Article 15 ("NYSHRL").

128.    The Plaintiff suffers (and at all relevant times suffered) from hemorrhoids, a slipped disc, and a pinched nerve. Symptoms of her disability included, but are not limited to, swollen growths.

129.     The Plaintiff's hemorrhoids were an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. Hemorrhoids further substantially limited one or more of the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the NYSHRL.

130.    The Plaintiff's slipped disc was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. The Plaintiff's slipped disc further substantially limited one or more of the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the NYSHRL.

131.    The Plaintiff's pinched nerve was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. The Plaintiff's pinched nerve further substantially limited one or more of the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the NYSHRL.

132.    The Plaintiff disclosed her disability(ies) to the Defendants, the Defendants knew about the Plaintiff's disability, and/or the Defendants regarded the Plaintiff as disabled (including being aware the Plaintiff was suffering from symptoms of a disability which required comprehensive scans).

133.    The Defendants discriminated against the Plaintiff due to her disability(ies) by subjecting the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

134.    Upon information and belief, the Company replaced the Plaintiff with a lesser or similarly qualified, non-disabled employee.

135.    Dr. Kato discharged, expelled, barred, and/or discriminated against the Plaintiff in compensation, conditions, and/or privileges of employment based on rights afforded to the Plaintiff under NY Exec L §296.

136.    Dr. Kato aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under NY Exec L §296.

137.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of The Plaintiff and/or conduct so reckless to amount to such disregard.

138.     As a direct and proximate result of the Defendants' violations of the NYSHRL,

The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering,

loss of enjoyment of life, and emotional damages.

139.     The Plaintiff seeks all damages to which she is entitled, including, but not limited

to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, emotional distress damages (including, but not limited

to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,

interest, attorneys' fees, and costs.

### COUNT V

**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.*)**

**The Plaintiff v. Clear Choice and Implant Dentistry**

140.     The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

141.     During all relevant times, the Company was an employer under the Americans

with Disability Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed

more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

142.     The Plaintiff suffers (and at all relevant times suffered) from hemorrhoids.

Symptoms of her disability included, but are not limited to, swollen growths.

143.      The Plaintiff's hemorrhoids were an impairment which substantially limited one

or more major life activities, including, but not limited to, bending over, lifting, and engaging in

otherwise strenuous physical activity. Hemorrhoids further substantially limited one or more of

the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the ADA.

144.   The Plaintiff's slipped disc was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. The Plaintiff's slipped disc further substantially limited one or more of the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the ADA.

145.   The Plaintiff's pinched nerve was an impairment which substantially limited one or more major life activities, including, but not limited to, bending over, lifting, and engaging in otherwise strenuous physical activity. The Plaintiff's pinched nerve further substantially limited one or more of the Plaintiff's major bodily functions, including but not limited to her muscular systems. Accordingly, the Plaintiff was disabled under the ADA.

146.   The Plaintiff disclosed her disability(ies) to the Company, the Company knew about the Plaintiff's disability, and/or the Company regarded the Plaintiff as disabled (including being aware the Plaintiff was suffering from symptoms of a disability which required comprehensive scans).

147.   The Company discriminated against the Plaintiff due to her disability(ies) by subjecting the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

148.   Upon information and belief, the Company replaced the Plaintiff with a lesser or similarly qualified, non-disabled employee.

149.    The Company's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of The Plaintiff and/or conduct so reckless to amount to such disregard.

150.    As a direct and proximate result of the Company's violations of the ADA, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

151.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT VI

**(Sex Discrimination and Sexual Harassment in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)**

152.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

153.    At all relevant times, the Company employed four or more persons.

154.    The Company is an employer under the definition of Executive Law Article 15 ("NYSHRL").

155.    Ms. Gilliam is a woman.

156.    The Defendants, including, but not limited to, its agents, harassed and discriminated against Ms. Gilliam with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Gilliam's sex.

157.    More specifically, by way of illustration, the Defendants, including by its agents and employees, made offensive and inappropriate comments regarding Ms. Gilliam's gender. For instance, Ms. Rodriguez suggested that Ms. Gilliam would be mistaken for a prostitute simply by associating with the male Dr. Zelig (notably, there was no connotation suggested for the male Dr. Zelig to be seen with Ms. Gilliam).

158.    This and other treatment constituted sexual harassment of Ms. Gilliam.

159.    The Defendants discriminated against Ms. Gilliam based on her sex and/or based on the fact that she was an African American woman ("sex plus" discrimination) by subjecting her to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

160.    Upon information and belief, the Company replaced the Plaintiff with a man and/or with a non-African American woman.

161.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of the Plaintiff and/or conduct so reckless to amount to such disregard.

162.    Dr. Kato discharged, expelled, barred, and/or discriminated against the Plaintiff in compensation, conditions, and/or privileges of employment based on rights afforded to the Plaintiff under NY Exec L §296.

163.    Dr. Kato aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under NY Exec L §296.

164.     As a direct and proximate result of the Defendants' violations of the NYSHRL, Ms. Gilliam has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

165.     Ms. Gilliam seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT VII

### (Sex Discrimination and Sexual Harassment in Violation of Title VII)
### The Plaintiff v. Clear Choice and Implant Dentistry

166.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

167.     During all relevant periods, the Company (Clear Choice and Implant Dentistry) was an employer under Title VII, 42 U.S.C. §§ 2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

168.     Ms. Gilliam is a woman.

169.     The Company, including, but not limited to, its agents, harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of the Plaintiff's sex.

170.    More specifically, by way of illustration, the Defendants, including by its agents and employees, made offensive and inappropriate comments regarding Ms. Gilliam's gender. For instance, Ms. Rodriguez suggested that Ms. Gilliam would be mistaken for a prostitute simply by associating with the male Dr. Zelig (notably, there was no connotation suggested for the male Dr. Zelig to be seen with Ms. Gilliam).

171.    This and other treatment constituted sexual harassment of Ms. Gilliam.

172.    The Company discriminated against the Plaintiff based on her sex and/or based on the fact that she was an African American woman ("sex plus" discrimination)by subjecting her to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

173.    Upon information and belief, the Company replaced the Plaintiff with a man.

174.    The Company, including through its agents and employees, committed a discriminatory act in a willful, wanton, and/or malicious manner.

175.    As a direct and proximate result of Company's violations of Title VII, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

176.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

# COUNT VIII

## (Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)

177.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

178.    The Plaintiff engaged in protected activity under the NYSHRL, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing, discriminatory, and retaliatory actions taken by the Defendants due to the Plaintiff's race, color, sex, and disability; and (ii) requesting and utilizing reasonable accommodations for a disability.

179.    The disability-related accommodation requests which Defendants retaliated against the Plaintiff for requesting included, but were not limited to, one or more days off as intermittent leave.

180.    Defendants unlawfully coerced, intimidated, threatened, and/or interfered with the Plaintiff's exercising of or enjoyment of rights granted by the NYSHRL.

181.    More specifically, the Defendants subjected the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

182.    Defendants engaged in retaliatory conduct with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such regard.

183.    As a direct and proximate result of Defendants' violation of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

184.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT IX

### (Retaliation in Violation of 42 U.S.C. § 1981, et seq.)

### Plaintiff v. All Defendants (Clear Choice, Holdings, Implant Dentistry, and Dr. Kato)

185.    The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

186.    During all relevant periods, the Defendants were employers under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981") because they employed one or more persons.

187.    The Defendants harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of the Plaintiff's race and color.

188.    The Plaintiff engaged in protected activity under Section 1981, including, but not limited to, by voicing protected concerns regarding, and otherwise opposing, the harassing and

discriminatory actions improperly undertaken by the Defendants, and Defendants' employees and agents, based on the Plaintiff's race and color, and the creation of a hostile work environment through illegal harassment and discrimination related to race and color.

189.    As retaliation for the protected activity she engaged in, the Defendants subjected the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

190.    More specifically, by way of illustration, the Defendants subjected the Plaintiff to a pattern of harassment and retaliation by individuals employed by the Defendants in retaliation for engaging in protected activities under Section 1981. For instance, Dr. Kato spoke with the Plaintiff in an aggressive manner with which he did not speak to her lighter-skinned coworkers. Further, the Defendants attempted to discipline the Plaintiff for alleged violations months after the fact with no contemporaneous records of wrongdoing.

191.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of the Plaintiff.

192.    As a direct and proximate result of the Defendants' violations of Section 1981, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

193.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT X

### (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)
### The Plaintiff v. Clear Choice and Implant Dentistry

194.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

195.    The Plaintiff engaged in protected activity under the ADA, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing, discriminatory, and retaliatory actions taken by the Defendants due to the Plaintiff's disability; and (ii) requesting and utilizing reasonable accommodations for a disability.

196.    The disability-related accommodation requests which Defendants retaliated against the Plaintiff for requesting included, but were not limited to, taking one or more days off as intermittent leave.

197.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with The Plaintiff's exercising of, or enjoyment of, one or more rights granted by the ADA.

198.    More specifically, the Company subjected the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

199.    The Company acted with malice and/or with reckless indifference to the federally protected rights of The Plaintiff.

200.     As a direct and proximate result of the Company's violation of the ADA, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

201.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

### COUNT XI

### (Retaliation in Violation of Title VII)

### The Plaintiff v. Clear Choice and Implant Dentistry

202.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

203.     The Plaintiff engaged in protected activity under Title VII, including, but not limited to, opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing, discriminatory, and retaliatory actions taken by the Defendants due to the Plaintiff's race, color, and sex.

204.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with the Plaintiff's exercising of, or enjoyment of, one or more rights protected by Title VII.

205.    More specifically, the Company subjected the Plaintiff to adverse employment actions, including, but not limited to, a harassing and hostile work environment, unwarranted disciplinary action, and termination.

206.    The Company acted with malice and/or with reckless indifference to the federally protected rights of the Plaintiff.

207.    As a direct and proximate result of the Company's violation of the ADA, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

208.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Tahi Gilliam, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for emotional distress and other mental and emotional pain and suffering;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff punitive damages;

H.  Award the Plaintiff her reasonable attorney's fees;

I.  Award the Plaintiff interest and costs;

J.  Award the Plaintiff all other damages to which she is entitled; and

K.  Grant such further relief as is just and equitable.

Respectfully Submitted,

Tahi Gilliam

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: August 15, 2022                     By*:      /s/Chandan Panigrahi*

Benjamin J. Wyatt, NY BAR # 5604590
BWyatt@Wyattlegalservices.com

Michael Varraso, NY BAR # 5619291
MVarraso@wyattlegalservices.com

Chandan Panigrahi, NY BAR # 5853437
Chandan@wyattlegalservices.com

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207